## FOREHAND v. JONES.

A contract between landlord and cropper provided that the cropper should prepare the cotton for market as rapidly as the same could reasonably be done, by picking and carrying it to whatever gin might be selected by the landlord, and thence to market, where it should be sold by the landlord if he thought proper; that should the cropper fail or neglect within a reasonable time to perform any of the stipulations on his part, the landlord might employ other labor to do so and deduct the amount thereby expended from the cropper's share; and that the title to all the crop should remain in the landlord until all the cropper's indebtedness to him should be fully paid, after which the cropper was to receive whatever might be due him. On October 27, the cropper was indebted to the landlord $127. The landlord went to the farm and ascertained that seven or eight thousand pounds of the cotton had been gathered and stored in the gin-house, and requested the cropper to have it packed and sent to market so that the indebtedness might be paid, and for fear the gin-house might be burned. The cropper refused, saying he would not gin and pack it until he had finished gathering the crop.

*Held,* that no such conversion of the property by the cropper was shown as to authorize a recovery in trover.

March 1, 1890.

Trover. Landlord and tenant. Croppers. Contracts. Conversion. Before Judge FORT. Macon superior court. May term, 1889.

Reported in the decision.

J. M. DuPREE, J. W. HAYGOOD and W. H. FISH, for plaintiff.

W. H. Harrison and Simmons & Kimbrough, for de-
fendant.

Simmons, Justice.

Forehand brought bail trover against Jones for the
recovery of certain cotton, corn, fodder, etc. It appears
from the record that Forehand, who owned the land,
made a contract with Jones, whereby Forehand was to
furnish the land and Jones the labor for its cultivation,
for the year 1886, and they were to divide equally the
proceeds of the crop after paying the expenses of culti-
vation. In this contract Jones agreed to prepare the
cotton for market "as rapidly as the same can reason-
ably be done, by picking it and carrying it to whatever
gin may be selected by Forehand, and thence to market,
when the same shall be sold by Forehand if he thinks
best so to do." Jones further agreed that should he
fail or neglect within a reasonable time to perform any
of the stipulations on his part, Forehand might
employ other labor to perform the same, and deduct the
amount expended out of Jones' share of the crop. It
was further agreed that the title in and to all the crop
should remain in Forehand until all the indebtedness of
Jones to him should be fully paid off, after which Jones
was to receive whatever might be due him under the
contract. On the 27th of October, 1886, Forehand
went to the farm and ascertained that Jones had gath-
ered between seven and eight thousand pounds of the
cotton, and that it was stored in the gin-house. He re-
quested Jones to have it packed and sent to market,
in order that the indebtedness might be paid off,
and for fear that the gin-house might be burned. Jones
declined, saying he would not gin and pack it until he
had finished gathering the crop. At this time Jones
was indebted to Forehand $127 for advances made to
him by Forehand. Upon the refusal of Jones to gin
and pack and carry the cotton to market, Forehand

commenced his action of bail trover against Jones for the recovery of the cotton, corn, fodder, etc. On the trial of the case, the plaintiff having shown the above state of facts, the defendant moved a nonsuit, which was granted by the court, and the plaintiff excepted.

We think the court was right, under the facts disclosed by the record. We do not think such a conversion of the property by Jones was shown as to authorize a recovery in trover. While it is true that the title to the crop was to remain in Forehand, under the terms of the contract, and Jones was to gin and pack it and carry it to market as rapidly as the same could reasonably be done, we do not think his refusal to stop his hands from gathering the remainder of the crop in the field and to put them to ginning and packing and hauling to market, was a conversion. It may have been a breach of the contract on Jones' part, but it does not show that he intended to convert the cotton or other produce to his own use. The cotton was in the seed and in the gin-house, and to prepare it for market would require additional labor on the part of Jones. In order to comply with the request of Forehand, it might have been necessary on the part of Jones to stop his hands from gathering the remainder of the crop. It is well-known that in the "gathering season" it is very important for farmers to take advantage of good weather, and it is sometimes necessary to keep the seed-cotton on hand for days and weeks in order that the laborers may remain in the fields and gather the cotton so that it shall not become damaged by bad weather. The tenant or "cropper" must be allowed some discretion in matters of this kind. If not allowed some discretion, the landlord, under contracts such as the one in this record, could insist that every bale picked should be immediately ginned and carried to market, and if the tenant should refuse, the landlord, according to the

contention of the plaintiff in error, could bring trover
and bail, and destroy the tenant's interest in the crop.

*Judgment affirmed.*